**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George E. BALDWIN, Defendant-
Appellant.**

**No. 13354.**

United States Court of Appeals
Seventh Circuit.

July 26, 1962.

Rehearing Denied Sept. 12, 1962.

Harry C. Kinne, Robert B. Johnstone, Chicago, Ill., (John H. Smalley, Chicago, Ill., of counsel), for appellant.

Edward R. Phelps, U. S. Atty., Marks Alexander, Asst. U. S. Atty., Springfield, Ill., John M. Daugherty, Asst. U. S. Atty., Peoria, Ill., Leon G. Scroggins, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant, George E. Baldwin, after indictment in two counts charging him with willfully filing false and fraudulent income tax returns for 1953 and 1954 in violation of Section 145(b) of the Internal Revenue Code of 1939, 26 U.S.C. § 145(b), and Section 7201 of the Internal Revenue Code of 1954, 26 U.S.C. § 7201, was convicted by a jury on both counts. He was sentenced to imprisonment on the first count with probation to follow on the second count.

Defendant appeals primarily on the ground that the government's evidence was insubstantial and does not support

the verdict. Specifically, his grounds for reversal can be stated: (1) that his expenses exceeded his income during the years in question and therefore, since no tax was due the government, he cannot be convicted of tax evasion; (2) that he is charged with receiving income in 1954 which was, in fact, non-taxable partnership income; (3) that the government's evidence did not establish the necessary element of willful evasion; and (4) that in filing his returns he acted in good faith on the advice of his attorney.

During 1953 and part of 1954, defendant was in the business of buying and selling oil leases and promoting the reactivation of old oil wells in a field located in Ohio. During the latter part of 1954, he was one of two general partners and managers in a limited partnership known as Arizona Material Service Company, a promotion of defendant for the development of a manganese mining claim in Arizona.

In January, 1954 defendant filed a joint federal income tax return with his wife for the year 1953 in which he reported an adjusted gross income of $3,473.23 with a tax of $162 due thereon. In January, 1955 defendant filed his individual income tax return for the year of 1954 in which his reported adjusted gross income was $1,072.92 with no tax due. The indictment charged that defendant's actual adjusted gross income in 1953 was $28,748.71 with a tax of $8,239.38 due, and that his actual adjusted gross income in 1954 was $42,230.72 with a tax of $19,278.20 due.

Defendant's 1953 return reflects gross receipts in the approximate amount of his bank deposits. The evidence indicates, however, that there were undeposited gross receipts of over $34,000, making his actual gross income approximately $88,000. Testimony of government witnesses and documentary exhibits show that defendant received cash, checks, and money orders from his business which he did not deposit in his bank accounts but used directly to pay business and personal expenses and to make

capital investments. These amounts were not reported. He also maintained secret deposits of like receipts with a brother and another person which were not reported. It is not seriously contested by defendant that he did not accurately report his gross receipts for the year 1953 and that the actual total was what the government's evidence indicated. Defendant maintains, however, that the government failed to prove that his adjusted gross income for 1953 was understated in a substantial amount. His contention is to the effect that his allowable expenses in 1953 were over $107,000 and therefore he not only owed no tax, but actually is entitled to a refund.

The question presented is whether defendant's claimed expenses are supported by the evidence. An examination of the record shows they are not.

More than fifty witnesses testified for the government with respect to payments made to or received from defendant. Their testimony and that of defendant's witnesses covers over 3,000 pages of the transcript, and the exhibits, consisting mainly of checks and receipts, number over 1,000. We believe that to detail each item of claimed expense would serve only to lengthen unduly this opinion; rather, we think it suffices to say that the total documentary-supported allowable expenses for 1953 was approximately $43,000, and consequently, defendant's understatement of adjusted gross income for 1953 was approximately $42,000.

Defendant similarly in his 1954 return inaccurately reported his gross receipts and allowable expenses and consequently, falsified his adjusted gross income. Defendant's 1954 return shows a gross income of $25,917.69. The evidence indicates, however, that for that year he had approximately $47,000 of income that was deposited in his bank accounts and an additional amount of approximately $47,000 income that was not so deposited, making his total gross income over $94,000. Defendant disputes the correctness of this sum. In a table

in his brief purporting to show his total income and disbursements defendant lists his receipts as $47,792.70. The amount, however, represents only income deposited in banks and omits the $47,021 representing undeposited income. Defendant claims allowable disbursements of $114,192.75. The government's evidence indicates, however, that his actual allowable expenses were only approximately $69,000.

Defendant's claimed disbursements for both years include duplication of expenses, personal expenditures, investments of capital, and other non-deductible items. For example, he included as allowable disbursements the cost of his and his family's personal living expenses, the costs of remodeling his home, and the purchase of an apartment building.

Defendant contends that the government incorrectly charged him with a total of $20,600.79 income from the Arizona Material Service Company partnership, since the government's computation of his adjusted gross income did not recognize his claim of disbursements for the partnership in this amount, which claim appears in the table of his alleged income and allowable expenses.

The evidence indicates that the subscriptions from the limited partners totalled approximately $20,000. The evidence also shows that approximately $11,500 of this sum was received by defendant. The government does not dispute defendant's contention that the amounts he received from the partnership fund were spent by him in behalf of the partnership. The untenableness of defendant's position, however, lies in the facts, first, that the government is not charging him with having received $20,-600.79 from partnership funds, but only approximately $11,500, and second, that defendant seeks to deduct partnership expenses in the amount of $20,600.79 without crediting his gross income with the $11,500 of partnership funds that the government traced to him. In other words, defendant does not take into account the fact that he was reimbursed in whatever amount he actually expended for the partnership from its working capital. Thus, his deduction for partnership disbursements without giving recognition to his reimbursement had the effect of inaccurately and falsely decreasing his adjusted gross income by the amount of the claimed disbursements.

In sum, the government's evidence supports the charges of the indictment that defendant understated his adjusted gross income in his 1953 and 1954 tax returns in substantial amounts.

Defendant's third contention that the government did not establish a willful evasion of his federal income taxes is also unsound. This contention raises a question which we believe was properly given to the jury for determination, since we are convinced that the evidence is sufficient to establish a specific and willful attempt on defendant's part to evade the payment of his income taxes. The jury, under proper, agreed upon instructions, decided against defendant and we find no justification to interfere with its verdict.

Defendant's fourth contention is that in filing his 1953 and 1954 returns he acted in good faith on the advice of his attorney who prepared them. The question of good faith reliance upon his attorney, however, was a matter for the jury to determine under proper instructions since we are convinced that there is ample evidence showing that defendant did not fully disclose the relevant facts to his attorney. The jury was instructed that, "Lack of intent may be proven by evidence showing that the Defendant did not report the income in question on advice of counsel, but this is not a defense unless you find that the Defendant made a full disclosure of all the facts to his attorney. * * *" This was a proper and also an agreed upon instruction.

The judgment is affirmed.