**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Justin CALL, Defendant-Appellant.**

No. 94–2229.

United States Court of Appeals,
Tenth Circuit.

Dec. 3, 1997.

---

Daniel F. Haft, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), Las Cruces, NM, for Plaintiff–Appellant.

Jill M. Wichlens, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, CO, for Defendant–Appellant.

Before BALDOCK, LOGAN and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

A jury convicted Defendant Justin Call of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Defendant was sentenced to 63 months imprisonment. This direct appeal followed. In his appeal, Defendant argues that the district court erred by excluding proffered expert testimony regarding the results of his polygraph test. Specifically, Defendant argues that the district court failed to apply the analysis set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and that the district court erred in failing to hold an evidentiary hearing on the admissibility of the polygraph evidence. Defendant also argues that the district court abused its discretion by alternatively holding that the polygraph evidence should be excluded under Fed.R.Evid. 403. Our jurisdiction arises un-

der 28 U.S.C. § 1291 and Fed. R.App. P. 4(b). We affirm.

## I

In August 1993, agents at a border patrol checkpoint north of Las Cruces, New Mexico discovered 2.3 pounds of cocaine concealed behind the dashboard of a car driven by Defendant. Defendant was indicted and pleaded not guilty. In preparation for his jury trial, Defendant retained a professor of psychology at the University of Utah to conduct a polygraph examination. Defendant then sought to introduce the results of the polygraph examination to the jury to show that he was being truthful in asserting that he had no knowledge of the cocaine concealed in the car. Without holding an evidentiary hearing, the district court concluded that the polygraph evidence was inadmissible.

## II.

■ As a threshold matter, we must address whether the *Daubert* framework must be applied to polygraph examinations.[1] We conclude that it must.

Federal Rule of Evidence 702 governs the admissibility of scientific expert testimony. The rule requires a determination that the testimony (1) is based on scientific knowledge, and (2) will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court set forth the framework for analyzing the admissibility of Rule 702 evidence. *Daubert* requires a determination of whether the proffered evidence is reliable. Under *Daubert*, courts measure reliability of scientific evidence by considering (1) whether the technique can and has been tested; (2) whether the technique has been subjected to peer review; (3) the known or potential error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has gained general acceptance in the scientific community. *Id.* at 593–95, 113 S.Ct. at 2796–97. This list is nonexhaustive and the inquiry under Rule 702 is "flexible." *Id.* at 594, 113 S.Ct. at 2797. The second Rule 702 requirement, that the evidence be helpful to the factfinder, is a question of relevance.

■ Prior to *Daubert* we consistently held that polygraph testimony offered for the purpose of showing that one is truthful is inadmissible. *E.g., United States v. Hall*, 805 F.2d 1410, 1416 (10th Cir.1986). In so holding, we applied a general acceptance test similar to the one set forth in *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923). *See United States v. Wainwright*, 413 F.2d 796, 803 (10th Cir.1969) (expert testimony must be accepted in scientific community in order to be admissible); *United States v. Hunter*, 672 F.2d 815, 817 (10th Cir.1982) (polygraph examinations are inadmissible because they are not "widely perceived by the scientific community as having a reasonable measure of precision"). Under the *Frye* test, expert testimony based on a scientific technique was inadmissible unless the technique was generally accepted as reliable in the relevant scientific community. *Daubert*, 509 U.S. at 584, 113 S.Ct. at 2792. In *Daubert*, the Supreme Court rejected the general acceptance test, concluding that Rule 702 superseded the *Frye* test. *Daubert*, 509 U.S. at 587, 113 S.Ct. at 2793. Thus, in light of *Daubert*, our cases applying the *Frye* general acceptance test are no longer good law.[2] Therefore, we may not apply the *Frye* test to determine the admissibility of polygraph evidence. Instead, we must apply the *Daubert* analysis.

The Fifth and Ninth Circuits have reached the same conclusion. In *United States v. Posado*, 57 F.3d 428, 432–33 (5th Cir.1995), the Fifth Circuit concluded that because *Daubert* overturned the *Frye* general acceptance test, the *Daubert* analysis must be

---

**1.** Although we have held in at least one post-*Daubert* opinion that polygraph results are generally inadmissible, the question of whether *Daubert* applies to polygraph examinations was not addressed. *See Palmer v. City of Monticello*, 31 F.3d 1499, 1506 (10th Cir.1994).

**2.** Although one panel cannot generally overrule circuit precedent, an exception exists if the Supreme Court has issued a superseding contrary decision. *In re Smith*, 10 F.3d 723, 724 (10th Cir.1993). In this case, *Daubert* constitutes the requisite superseding decision.

applied to polygraph evidence. *See also United States v. Cordoba*, 104 F.3d 225, 227 (9th Cir.1997). Like the Fifth and Ninth Circuits, we cannot discern a reason to treat polygraph evidence differently than other scientific evidence under Rule 702. *Daubert* itself contains no support for such an exception. Consequently, polygraph examinations, like all other scientific evidence, must be subjected to the Rule 702 analysis set forth in *Daubert*.

However, our holding does not suggest a newfound enthusiasm for polygraph evidence. We caution that our application of *Daubert* to polygraph evidence does not imply that polygraph examinations satisfy the requirements of Rule 702. Furthermore, even if polygraph evidence should satisfy Rule 702, it must still survive the rigors of Rule 403, *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2797 which permits the district court to exclude evidence where its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403.

### III.

We now turn to our review of the district court decision in this case. We review de novo whether the district court properly followed the framework set forth in *Daubert*. *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1517 (10th Cir.1996). However, once we determine that the district court correctly applied the *Daubert* standards, we may reverse the district court only if the exclusion of the expert testimony constituted an abuse of discretion. *Id.*

Defendant first asserts that the district court did not apply *Daubert* but instead excluded the evidence based on a per se rule of inadmissibility. Although the district court cited a pre-*Daubert* opinion, *United States v. Hall*, 805 F.2d 1410, 1416 (10th Cir.1986), for the proposition that polygraph evidence is inadmissible to show that one is truthful, the record clearly demonstrates that the district court applied *Daubert* to the proffered polygraph evidence. The district court explicitly stated in its order that it evaluated the proffered testimony in light of the standard set forth in *Daubert* and that "nothing in *Daubert* would disturb the settled precedent that polygraph evidence is neither reliable nor admissible to show that one is truthful." Consequently, we conclude that the district court did in fact apply *Daubert*.

Defendant next asserts that the district court erred by failing to hold an evidentiary hearing to determine the admissibility of the polygraph results. Although Defendant requested a hearing, *Daubert* does not mandate one. Nevertheless, an appellate court must have before it a sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law. The analysis outlined in *Daubert* is extensive, requiring the district court to "carefully and meticulously" review the proffered scientific evidence. *Robinson v. Missouri Pacific*, 16 F.3d 1083, 1089 (10th Cir. 1994). In this case, the material presented to the district court was limited. Defendant outlined the areas about which his expert would testify during an evidentiary hearing, but provided the district court with minimal substantive information. In addition, the district court made no specific factual findings regarding its application of Rule 702 and *Daubert*. However, we need not reach the question of whether this record is insufficient to permit meaningful review, because we hold that the district court properly excluded the evidence under Rule 403.

Under Rule 403, the district court may exclude evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. A decision to exclude evidence under Rule 403 will not be reversed absent a clear abuse of discretion. *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1526 (10th Cir.1997). Therefore, we will not reverse the district court's decision absent a "definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (citations omitted).

In this case, the Defendant sought to introduce the polygraph evidence to bolster

his credibility. The polygraph results would have corroborated his own testimony that he had no prior knowledge that any cocaine was in the vehicle. The credibility of witnesses is generally not an appropriate subject for expert testimony. *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir.1993). Such testimony is often excluded because it usurps a critical function of the jury and because it is not helpful to the jury, which is capable of making its own determination regarding credibility. *Id.*; *see also Conti v. C.I.R.*, 39 F.3d 658, 663 (6th Cir.1994) (holding that polygraph evidence is almost never admissible under Rule 403). There is also the danger that the jury may overvalue polygraph results as an indicator of truthfulness because of the polygraph's scientific nature. *United States v. Falsia*, 724 F.2d 1339, 1342 (9th Cir.1983) (noting polygraph's "misleading appearance of accuracy"). The district court based its decision to exclude the polygraph results on a determination that the evidence was more prejudicial than probative, and would not assist the jury. Under the circumstances, we cannot find that the district court made a clear error of judgment or exceeded the bounds of permissible choice. Thus, the district court did not abuse its discretion in excluding the polygraph evidence.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

EBEL, Circuit Judge, dissenting

Defendant Justin Call contends that the district court abused its discretion by excluding expert testimony regarding the results of Defendant's polygraph examination. Specifically, Defendant argues that the district court's failure to hold an evidentiary hearing on the reliability of polygraph evidence deprived the district court of an adequate factual background on which to base the exclusion. Thus, this case turns on whether the district court erred by refusing to hold an evidentiary hearing.

I agree with the majority that the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) over-ruled pre-*Daubert* Tenth Circuit cases, including *United States v. Hall*, 805 F.2d 1410, 1416 (10th Cir.1986), that utilized the general acceptance test set forth in *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923). As the majority recognizes, a district court abuses its discretion under *Daubert* by refusing to hold a requested evidentiary hearing on the admissibility of a polygraph exam under Federal Rule of Evidence 702 if the court lacks sufficient information to make a determination of the reliability of the polygraph evidence without the benefit of such a hearing. However, the majority here holds that the district court did not abuse its discretion because it excluded the polygraph evidence as unduly prejudicial under Federal Rule of Evidence 403. As a result, the majority does not reach the issue of whether the district court should have held an evidentiary hearing regarding 702 admissibility.

The inquiry mandated by *Daubert* under Rule 702 requires the district court to evaluate factors that not only measure the reliability of the evidence under consideration, but also that shed light on whether the evidence or testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," *Daubert*, 509 U.S. at 591, 113 S.Ct. at 2795 (citations omitted). These questions lie at the heart of evaluating the relevance and probative value of proffered evidence under both Rule 401 (relevance) and Rule 403 (prejudice). Consequently, I read *Daubert* as impacting the evaluation of scientific evidence not only under Rule 702, but under Rules 401 and 403 as well. In my judgment, therefore, a district court abuses its discretion by excluding polygraph evidence under Rule 403 if it lacks sufficient information to make a determination regarding the reliability of polygraph results and fails to hold an evidentiary hearing in the face of proffered evidence materially addressing issues relevant to Rule 403.

The majority points out that polygraph results may possess a "misleading appearance of accuracy" that threatens to undermine the jury's responsibility to make an independent evaluation of the truthfulness of witness testimony. However, neither we, nor other circuit courts, have adopted a per

se rule against the admissibility of polygraph evidence under Rule 403. *See United States v. Cordoba,* 104 F.3d 225, 228 (9th Cir.1997)(holding that *Daubert* overruled any per se rule that polygraph evidence is always inadmissible under either Rule 403 or Rule 702). Although the use of experts to bolster witness credibility is disfavored, no absolute rule prohibits utilizing expert testimony for this purpose. *See United States v. Shay,* 57 F.3d 126, 131 (1st Cir.1995) ("[N]o constitutional provision, law, or rule requires the automatic exclusion of expert testimony simply because it concerns a credibility question."); *see also Cordoba,* 104 F.3d at 227 ("*Daubert* overruled a per se rule excluding expert testimony regarding the credibility of eyewitness identification.") (citations omitted). While "an expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility," *United States v. Samara,* 643 F.2d 701, 705 (10th Cir.1981), courts have allowed the use of expert testimony to support the credibility of a witness when the issue of credibility is central to the case, such as in sexual molestation cases where an expert testifies that a witness exhibited characteristics consistent with those observed in other victims of sexual abuse, *see, e.g. United States v. St. Pierre,* 812 F.2d 417, 419–20 (8th Cir.1987) (expert can inform jury of characteristics found in sexually abused children to compare with characteristics exhibited by alleged victim). *See also* Fed.R.Evid. 704(a) and advisory committee's note (expert opinions are not inadmissible merely because they embrace the ultimate issue to be decided by the trier of fact, but the expert cannot "merely tell the jury what result to reach.").

Similarly, no per se rule bars a polygraph expert from describing the physical responses an examinee displays when being truthful or untruthful and then informing the jury of the characteristics exhibited by a particular defendant, provided that the expert does not express his individual opinion as to whether the defendant was actually telling the truth. Therefore, Defendant would not have been barred from introducing polygraph evidence in this case if he met the standards of admissibility under Rules 401, 403, and 702. In order to address successfully the district court's concerns under Rule 403, Defendant needed to persuade the court that juries do not overvalue polygraph and are not unduly swayed by polygraph results and that the characteristics revealed by a polygraph test are probative of an examinee's truthfulness. Defendant made a detailed offer of proof addressing these precise issues.[1]

A *Daubert* evidentiary hearing is designed to provide the court with a more complete understanding of the reliability and relevance of proffered scientific evidence. In *Franks v. Delaware,* the Supreme Court held that a district court cannot reject a properly submitted evidentiary proffer and must hold an evidentiary hearing unless the proffer on its face is insufficient to raise a material issue of fact. 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). Although addressing attacks on the reliability of an affidavit supporting a search warrant, the *Franks* opinion provides guidance on the

---

1. Defendant offered to prove that (1) Dr. David Raskin administered a control question polygraph examination of Defendant; (2) control question polygraph examinations are scientifically reliable; (3) control question polygraph examinations have been recognized as reliable by scientific experts in the field; (4) control question polygraph examinations have a low potential rate of error; (5) control question polygraph examinations are probative of the truthfulness of an examinee's answers to relevant questions; (6) Dr. Raskin conducted the polygraph examination of Defendant in accordance with standard examination procedures; (7) Defendant's performance during the polygraph test indicated that he was truthful in answering questions about his knowledge of the presence of drugs in the car he was driving; (8) Defendant answered in the negative

all of the questions that asked him if he knew that the car he was driving contained drugs; (9) studies show that juries are not unduly influenced by polygraph evidence; (10) Dr. Raskin's testimony would be extremely relevant to the issue of Defendant's credibility. *R.O.A. Vol. I at 31.* The government already had stipulated that Dr. Raskin is a qualified expert in the field of polygraphy. It may be that not all of this evidence would be appropriate for submission to the jury, but that is not the issue raised on this appeal. The issue before us is only whether the court should have conducted a *Daubert* hearing before exercising its discretion in determining what evidence should go to the jury. The offer of proof describes evidence that the court should have received before exercising its discretion.

proper evaluation of offers of proof. *See also United States v. Russo*, 527 F.2d 1051,1058–59 (10th Cir.1975) (suggesting that an offer of proof that sufficiently set forth the reliability of polygraph evidence would require the trial court to hold a full-scale evidentiary hearing on the admissibility of polygraph results).

Here, Defendant offered to present evidence directly related to the issues posed by the district court's evaluation of whether to admit the polygraph results under Rules 401, 403, and 702. While the government proffered evidence regarding the unreliability of polygraphs, the record reveals no evidence offered by the government to contradict Defendant's claim that juries are not prejudiced by polygraph results. As a result, in order to exclude Defendant's polygraph evidence, the district court either had to reject Defendant's proffer or conclude that the proffer was unpersuasive. In my view, either approach constituted an abuse of discretion. First, the only evidence presented to the district court on the issue of prejudice as reflected in the record demonstrates that polygraph evidence does not unduly sway the jury. Second, the conflicting evidence proffered by the government and the Defendant as to the reliability of polygraph tests presents exactly the type of material dispute that the Supreme Court in *Franks* concluded requires further inquiry in the form of an evidentiary hearing. Third, the proffers by themselves do not provide a sufficiently developed factual basis for us to review whether the district court properly applied the relevant law. Therefore, I believe that the district court erred by not holding the requested evidentiary hearing to develop a sufficient factual background before deciding to exclude the polygraph expert's testimony.[2]

For these reasons, I respectfully dissent. I would hold that the district court abused its discretion by refusing to hold an evidentiary hearing on the admissibility of polygraph evidence under Rules 401, 403, and 702 pursuant to the standards mandated in *Daubert*.

**2.** Of course, the issues surrounding the admissibility of polygraph evidence will become clearer once the Supreme Court issues an opinion in *United States v. Scheffer*, 44 M.J. 442 (C.A.A.F. 1996), *cert. granted*, —— U.S. ——, 117 S.Ct. 1817, 137 L.Ed.2d 1026 (1997).